Good morning and welcome to the 11th Circuit. Judge Pryor and I are very excited and pleased to welcome to our court today and this week with us Judge Harvey Bartle from the Eastern District of Pennsylvania, sitting with us from Philadelphia, and we're very honored to have him join us. He has helped our court out on other occasions and I'm sure you're going to enjoy visiting with him as much as we do. Thank you very much, Judge. With that, we will begin with Blue v. Lopez. Thank you, Your Honor, and may it please the court. My name is Jeff Filipovits, and along with Craig Jones and Jack Batson, I represent the appellant John Blue. This court should not adopt the rule that was announced by the Georgia Supreme Court in Monroe v. Sigler. That rule is a rule of state law which defines the element of probable cause in a state law malicious prosecution claim. The rule is that the denial of a directed verdict in a criminal case absolutely bars a subsequent civil action, notwithstanding the defendant's subsequent acquittal by the jury. The first reason that that rule should not be applied is because federal law is already robust in the definition of probable cause, especially in the context of Section 1983 litigation. There is simply no need to turn to state law to define this federal claim. The United States Supreme Court recently reaffirmed that the elements of a 1983 claim remain defined by federal law in Manuel v. City of Joliet. Under Section 1988, a court should only turn to state law to define a federal claim if the court first determines that there is a deficiency in the federal law. Deficiencies have been found, for example, in the context of statute of limitations, which doesn't exist in 1983, or in survivorship rules, which also don't exist in 1983. I'm sorry to interrupt you, and you can get back to this if you want to. I will tell you, I think you're probably right on the Monroe Rule, at least speaking for myself. But having said that, why wouldn't Ms. Lopez be entitled to qualified immunity in this case when your client, it seems, even on the facts interpreted in the light most favorable to him, admits having, quote, pushed off Ms. Lopez's car? Why wouldn't she at least have had arguable probable cause in those circumstances to have filed charges against him? Because it's simply not probable cause for aggravated assault. If I could back up. So to determine arguable probable cause, we have an allegation that Lopez fabricated evidence. So what we have to do is remove anything that the jury could find was fabricated, and then look at Mr. Blue's statements and see whether those statements themselves gave rise to arguable probable cause. And there are a number of facts that are in dispute with regard to what Lopez did and what Blue's reaction was. If we look at Blue's statements alone to the investigator, he claims that Lopez rammed into his car, refused to move her car, and did this in a context where she did not identify herself to him as a defects worker. She had no contact with him prior to ramming into his car. After she rammed into his car to prevent him from leaving, and then she refused to move, he maneuvered his car such that he could escape and drive away. Now, he did use the phrase push off in the context of that discussion, but there was no follow-up question from any of the investigators about what that meant. Let me ask you something else, though. He did admit that his car was moving at the time that she allegedly hit him, did he not? He admitted it was moving, yes, but simply backing out of his parking spot at the time she approached at a speed and rammed into his car. And he did admit, and I think you were getting to this, that he pushed her off, right? Yes, but that's simply not sufficient for an aggravated assault charge. Maybe a traffic violation, but pushing her off when there's already contact made, there's no allegation taken in light most favorable to him that he pulled forward, rammed backward, pulled forward, rammed backward. I think for us to read that kind of action into the phrase push off, I think starts to construe the evidence in light most favorable to the defendant rather than the plaintiff. What does push off mean, do you think? I think it means that he maneuvered his car, and in the context of maneuvering his car, there may have been contact with Lopez's car, but the question here isn't whether there was contact. The question is whether he intended to commit a violent injury to Lopez, and incidental contact between two cars is simply not sufficient to establish aggravated assault. And we also have to grapple with the issue in this case. This case is somewhat unique insofar as Lopez is the complaining witness, and we aren't pursuing the person who went to the officers. And so we have to grapple with the fact that Lopez, at the time Blue made those statements, the warrant had already issued, and he was at the police station being interviewed. Lopez had no idea that those statements had been made. And so when we're judging from whose perspective probable cause exists, from Lopez's perspective, she has no idea what he has said. But she doesn't need to know what he said if she knows that he pushed her car. I mean, if that, if pushing the car were, and I understand your argument is that it's not sufficient, but if it were sufficient, what difference does it make what he said he knew? I mean, all that really matters is what he did. Well, I think we have to look at the facts known at the time of the arrest from the perspective of the officer or of the official in this case. If Lopez reported that he engaged in conduct that constituted an aggravated assault and exaggerated the charges such that this conduct went from, at worst, a traffic offense to a felony punishable by 20 years imprisonment, I don't think this court should condone that level of exaggeration. So the fact that she exaggerated those statements so broadly should not, you know, should render her liable for the overcharge. The district court judge didn't analyze the facts, did he? He just simply said that a directed verdict was denied and that's the end of the case. That's correct, Your Honor. And this was raised, I think, trying to affirm if right for any reason. They did raise qualified immunity, but the court did not reach it below. So your view would be that the district court in the first instance ought to decide the issue of qualified immunity rather than this court? I think that the court has the discretion to proceed to the qualified immunity question if it were to, but I think reversing on the Monroe issue and remanding would also be appropriate. So, and I want to provide a little bit more context to Mr. Blue's statements in his interview to the police about what he actually said happened, if I could grab my note. Sure. So he begins by saying, he told his son to get in my vehicle, I told my son to get in my vehicle, I put my vehicle in reverse and the next thing I knew, she slammed into the So I hit my gas, pushed her off, and I left. That's the same the court is referring to. The detective says, so you're saying that she struck your vehicle? Yes, sir. Then later in the same interview, and there's no follow-up question about what do you mean you pushed her off? Do you mean you maneuvered your vehicle until you could move? Well, except that he says I pushed the gas, I pushed my gas and pushed her off, right? So I think it's pretty clear what he means. What else could he have meant other than that he, you know, hit the gas to go backwards to get her off of the bumper? But it's also impossible to move his car without hitting the gas, so I think we're reading a lot into that statement. But I mean, well, I'm trying to figure this out, so you're saying it might mean something else, so I'm wondering what else could it mean? Simply that if he's backing out of his spot and Lopez comes up behind him and locks his car in, but he, it's still possible for him to maneuver his van by moving forwards and backwards so that he can move around Lopez's car. And in the context of doing that, if he made some contact with Lopez's car, there's still, even if that is what he said to the detective, that is still not sufficient for an aggravated assault. Under Georgia law, a car accident, mere collision, for example, is insufficient to show the intent requirement for an assault. And that was held at a parole revocation hearing with a lower standard of proof. That's a Klinka v. State, 315 Georgia Appeals, 635. Georgia law is clear that this type of accident or movement with a car is simply not sufficient to show injury to the person. As I said, perhaps, you know, arguable probable cause for a traffic offense would be a much different story here than arguable probable cause for aggravated assault. You seem to be conceding that he touched her car, but I thought he said that he maneuvered his car out without touching hers. Well, and that's, that's the second part of his statement that I was about to get to, to provide more context to this pushing off. Detective says, we have witnesses at the scene that say they saw you strike her vehicle several times. Do you recall that? He says, if I struck her vehicle, I was trying to get out of the space because she hit my vehicle first. Detective. Okay. So you wouldn't disagree that you may have struck her. Blue. I don't think I struck her vehicle several times. All I, if you have witnesses that say I struck her vehicle, then they had to see her hit my vehicle first. Detective. Do you remember backing up and pushing her vehicle out of the way? Blue. I know that when she first bumped into me, for some reason, all I did was put it in the reverse. I hit the gas, pushed her out of the way and took off. And so, I think that, you know, he didn't affirmatively deny that there was some contact between the vehicles. But again, this contact between the vehicles is simply not sufficient for aggravated assault. Thank you. Thank you, counsel. May it please the court. My name is Michelle Hirsch. I represent Maria Lopez, the appellee in this case. I'm here from the Georgia Department of Law. The district court was correct when it determined that probable cause existed for the malicious Mr. Blue and therefore barred his malicious prosecution claim. And there are two reasons for the existence of probable cause. First is the application of the Monroe Rule, which the district court relied upon when reaching its conclusion. And second, based upon the facts of the case, which established actual probable cause to arrest Mr. Blue. But the district court based its decision solely on the Monroe Rule, didn't it? That is correct. The district court did. And isn't that reversible error in light of the case of Wood v. Kessler, where Judge Hall said, in a footnote, the federal law of probable cause, not state law, should determine whether a plaintiff has raised genuine issues of material fact with respect to a 1983 malicious prosecution claim. And the court did not apply federal law. It applied Georgia law. Well, Your Honor, I believe that the district court, it did apply federal law because federal law defines a federal malicious prosecution claim as a common law malicious prosecution claim plus a non-lawful seizure. And that goes back to UBO back in 1988. And so the federal courts have already incorporated a state malicious prosecution claim into the elements of a federal law. But not a particular law of the state. In other words, Judge Hall goes on to say that the federal constitutional tort, you would agree with that, that we're talking about? Yes. And the federal law should not differ depending on the tort law of a particular state. So what we're doing is applying a particular rule of Georgia law and incorporating that into 1983. So that if it were in Alabama, and Alabama didn't have the same rule as Georgia had, then the case could go forward. That doesn't seem to be the way federal law would operate, it ought to be the same throughout the United States. Well, there are some cases in the 11th Circuit, Your Honor, that have gone past that footnote in the wood case where they've looked at the actual elements of a malicious prosecution claim under the common law of each of the states, of Alabama, of Georgia, of Florida. What if Georgia abolished the tort of malicious prosecution? Let's say it abolished it. Would the 1983 action not be available in Georgia for malicious prosecution? I don't know the answer to that question, Your Honor. I would say that the federal courts would say that the first element of a federal malicious prosecution claim has been met simply because there is no such claim in Georgia, especially under the recent cases of Manuel v. Superior. So then nobody would have a malicious, you couldn't have a 1983 case for malicious prosecution in Georgia if the Georgia legislature abolished a malicious prosecution? I'm saying... You could have one in Alabama, but you couldn't have one in Georgia. I'm saying that I believe that the federal courts would likely hold that because there is no adequate remedy for a malicious prosecution claim in Georgia, that that first element of a federal malicious prosecution claim has been met and therefore would let it move forward to a federal to determine whether or not there is a Fourth Amendment violation. And I would point out that when looking at the elements of a malicious prosecution claim a common law malicious prosecution claim, the federal courts and in the Eleventh Circuit as well have always looked to the actual elements of each of the different states. For instance, Florida has six different elements of a malicious prosecution claim. Georgia has four, and Alabama has four as well, but they're different. We all have to agree that the 1983 originates out of the Civil Rights Act of 1871, wouldn't you agree? I agree with that, Your Honor. And that statute was passed pursuant to Section 5 of the Fourteenth Amendment. That's what gave Congress the power to pass the Civil Rights Act. Now, if you look at the Congress of 1871, you think the intent was to allow the local tort law of each individual state to govern a federal cause of action? I believe that the federal courts have traditionally, since the passage of the Federal Civil Rights Act, have looked to tort analogies in the individual states in order to define the contours and the rights under 1983. Wilson v. Garcia talks about it, Monroe v. Pape, Frisco v. LaHue, and even in Hecht v. Humphrey, they look to state law to determine whether or not They say the Hecht v. Humphrey talks about the common law. It doesn't say the common law of each individual state, so that depending on what state you came from, you may or may not have a federal cause of action. That seems anomalous to me. You could do that. That is true, Your Honor. They do not talk specifically versus state common law or federal common law, but in the common law, they always go on to define the elements of a malicious prosecution under state law. And I would like to make a point that Monroe rule isn't a rule of what an element of a state malicious prosecution claim is. Monroe is simply a way to establish a presumption of probable cause. So let me ask you something about that then. In federal summary judgment proceedings, what is the standard under which we view the evidence? We view it in the light most favorable to the non-moving party, right? That's correct. Okay. But if under the Monroe rule, well, on a motion for directed verdict in a criminal case, what is the standard by which the judge determines whether the directed verdict should be granted? The judge looks to the evidence in the light most favorable to the prosecution, but determines whether... Don't you see a problem there? But the standard is... How can we follow the summary judgment rules if we are now looking at the evidence in the light most favorable to the moving party? I have two responses, Your Honor. One is the directed verdict standard is much higher. They look to the standard to determine whether or not there is any evidence to show a reasonable doubt in favor of the criminal defendant. My second response to that is Monroe contains a fraud and corruption exception. But there might not be fraud or corruption, but there could still be a problem because when you're looking at evidence on summary judgment and there are conflicting stories, there might not be fraud, but the jurors ultimately, if the summary judgment is denied, will have the opportunity to decide which party they believe, which party they thought maybe just had a better point of view for perception purposes or whatever the case may be. There doesn't have to have been fraud for the jury to decide in favor of the non-moving party on summary judgment, right? That's correct. But in a directed verdict case, you know, the judge is assuming that the prosecution witnesses will all be believed. And if they're not, it seems like there's an irreconcilable conflict there between the Monroe rule and the summary judgment standard without even the fraud exception. The Georgia Supreme Court, both in Monroe and in Aiken, both looked at that and determined that because the standard on directed verdict is so much higher than what the probable cause standard is, is that it would incorporate a probable cause analysis into determining whether or not the directed verdict should be granted. And I would note that in an unpublished decision panel of this court a couple of weeks ago, they applied the Monroe rule to... Well, let's just talk about that for a second. You're talking about Genuzo? Yes. But in that case, that issue wasn't directly before the court. They didn't purport to opine on it. It wasn't briefed. They just sort of made a passing reference. And it was also unpublished, so it's not binding. That is correct, Your Honor. So is it your position that that should have any effect on our analysis here? And if so, why? I think it's not binding, but I think it's persuasive in that at least one federal circuit court, in addition to a couple of federal district courts, have looked at the rule and have considered it. Well, that's exactly my question, right? Have they considered it? Did they actually consider the rule in Genuzo? I mean, did they actually... Was the issue briefed? Was there an issue raised about whether the Monroe rule could apply? Was it actually considered by the court? Because the way I read it, I don't see that it was, but I could have missed something. And if you think it was, I'd like to hear why. In Genuzo, I did go back and look at the briefs, and the issues that have been raised before this court were not raised in the Genuzo case. The application of the rule, the rule was raised and it was applied. In some of the district court cases, as well as the state court cases that have interpreted the Monroe rule, they have looked at the fraud exception and the corruption exception, and they have looked at the differing levels of the burden of proof between a directed verdict and probable cause to make the finding that it isn't an unfair rule. Because it really doesn't change anything. It doesn't alter the definition of probable cause. It doesn't change what the elements of... That's sort of a different comparison, right? The question is, directed verdict standard versus federal summary judgment standard. Correct. But the directed verdict standard, when you incorporate the fraud and corruption standard, provides, or exception, provides... But that's not really enough. In this case, it's a perfect example of that. Because here, the jury believed Blue and not Lopez, but under the directed verdict standard, that's not taken into account because the court can't make credibility determinations. That is correct. But here, there's no corruption, there's no fraud, and yet Blue would be left without a remedy under 1983. And I don't understand how that's consistent with federal law. Well, Mr. Blue could have presented evidence of corruption or fraud to the district court to establish the exception under Monroe, and he didn't do it. In fact, the fraud and corruption standard wasn't even addressed in the district court. But I'm saying the standard itself seems to me to be inconsistent with the purposes of 1983. Your Honor, for purposes of 1983, and if you're speaking in terms of the 1988 application, just for clarification, or just in general? Just in general. I mean, the Fourth Amendment doesn't concern itself only with fraud. And yet, the only way Mr. Blue could have a cause of action under your interpretation is if he could show fraud or corruption, which is, of course, a pretty high standard. Fraud or corruption would bring him within the exception, but it also has to go back to your expectation that the courts in the state of Georgia are going to apply the law like they should. They're going to apply that higher standard for directed verdict that shows that a criminal defendant, the evidence is sufficient for a jury to find the criminal defendant guilty beyond a reasonable doubt. And therefore, probable cause certainly would be subsumed within that standard. And so, for that reason, there is a remedy in the event that something amiss does happen. For instance, fraud as a corruption standard, which was shown in the Wolf Camera case cited by the plaintiff. Let me ask you something else, if you don't mind. Assuming, and I don't know, I'm just speaking for myself, assuming that we find that the law does not apply, is there some reason that we should go to and decide the qualified immunity issue ourselves in the first instance when the district court did not decide it? This court has the discretion to do so, and I would submit that this is a very good case for the court to do so because the evidence of Mr. Blue's statement is presented to the court on videotape. And so, there really is no dispute about what his statements to the arresting officer were. And with respect to those statements, I would point out that with respect to intent, that's a jury question that does not have to be established in order to establish probable cause to prosecute. In addition, the briefs made comments about affirmative defenses, which are also not part of the probable cause analysis. Based upon Mr. Blue's statements to the detective who was investigating this crime, he essentially corroborated everything that Ms. Lopez told the detectives. The statement of Mr. Blue tracks almost exactly the arrest warrant about him pushing her off, hitting the gas. All of those things show that there was probable cause, or at least arguable probable cause, to prosecute Mr. Blue. So, aggravated assault, the first element is attempt to commit a violent injury to the person of another. If we construe the facts in Mr. Blue's favor, tell me how there was arguable probable cause for that crime, for that element of the crime. Under Georgia law, a motor vehicle has been determined to be a weapon that can be used and is presumed to be able to create bodily injury to another. If the car's... Go ahead. Go again. Counsel, when is it that the court looks at the probable cause issue? Is it at the time that the criminal action is initiated? It's at the time that the plaintiff is seized. The plaintiff is what? Seized. Seized. Yes. All right. All right. Now, on directed verdict, in the criminal case, the court is not looking at the situation at the time the plaintiff was seized. The court is looking at the evidence at the time of the trial, which could be a year later. There could be a lot of additional evidence that was obtained by the government, the prosecutor between the time of the seizure. So we're talking about a different point in time. The directed verdict issue comes up a lot later than at the point of seizure. And the state trial judge, in issuing a directed verdict, is not concerned about what happened at the time of the seizure. The judge is concerned about what happened at the trial. So we're talking about two different periods of time. I would agree with... So therefore, it makes no sense to apply the directed verdict rule. It's at a different period of time. I would agree that the primary focus of the state criminal court judge is the evidence... Not the primary focus, it's his only focus, her only focus. But the evidence that's being presented is still going to incorporate evidence that is sufficient to establish probable cause. But what I'm saying is that there may have been a witness, a key witness came forward after the seizure that affects the whole situation of directed verdict. That is correct. And so the judge isn't talking about the situation at the time of the seizure. So therefore, it makes no sense to apply the directed verdict rule. I see my time is up, Your Honor, unless there are additional questions. You can answer Judge Bartle's question. Oh, I'm sorry. I apologize. I thought I had... You are correct, Your Honor. There could be things that have come up in the course of the criminal trial that weren't apparent or even present at the time of the actual seizure and the arrest. Thank you, counsel. Thank you. Just to, assuming the court does reach the qualified amendment of the issue and does address it, I just want to try to recast the context of Mr. Blue's statements. Because it's difficult to divorce his statements from Lopez's initial report. But if we do that, which we must, Mr. Blue reported that a woman who didn't identify herself, who demanded to speak with his children without any apparent authority to do so, rammed her car into him and then refused to move her car. He stated that this woman was acting erratically before that. And then he pushed off, which could also mean that he pushed his car off by hitting the kind of bumped off of her after the contact had been made, maneuvers his car and leaves. And if that is reported to an officer, that officer then believing it's reasonable to charge the person with aggravated assault. There's no evidence in Blue's statement to the police about intent to commit an injury. There's no evidence in Blue's statement to the police about reasonable fear of imminent violent injury by Ms. Lopez. For the police to develop arguable probable cause for an assault in that context, they can't do so simply on Blue's statement. They would have to talk to Lopez. And once they have to get information from Lopez, there's immediately an issue of fact for the jury because Lopez's statements are rife with contradictions compared to other witnesses. And so anything that Lopez said is subject to dispute. So in that regard, the crime of aggravated assault, given the elements, I don't think a pushing off of a car is sufficient to show intent to commit an injury or imminent fear of an injury. We do believe that the court needs to look to aggravated assault and not any lesser included offense. With regard to Monroe, I think the court, every time I made a note, the court addressed it. So I don't have anything further to offer on the Monroe front. And that concludes my argument unless there are any further questions. Thank you, Counsel. Thank you.